IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                     Cr. No. 21-20179-JTF

WILLIE FANT,

      Defendant.

---

## MOTION TO SUPPRESS EVIDENCE
## WITH INCORPORATED MEMORANDUM IN SUPPORT

---

Comes now the defendant, Willie Fant, by and through appointed counsel, Kafahni Nkrumah, Esq., and moves this honorable Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, to suppress any and all physical evidence whether tangible or intangible; any statements or admissions alleged to have been made by Mr. Fant; any and all observations of law enforcement officers and any other tangible or intangible evidence obtained during or as a direct or indirect result from the search of packages addressed to Mr. Fant's residence at 1001 Creston Ave., Memphis, TN 38127, by law enforcement officers pursuant to search warrants.

### FACTS

On April 8th, 2021 U.S. Postal Inspector, Task Force Officer (TFO) Robert Meeks, was contacted by TFO's for the U.S. DEA Group 2, about someone they alleged was involved in drug distribution at 1001 Creston Ave., Memphis, TN 38127. They alleged that their target, Mr. Willie Fant, was receiving drugs from the Los Angeles area through the mail. An investigation was initiated.

On May 3rd, 2021, TFO Meeks received an alert from the Frayser Post Office that a parcel, USPS priority mail 9505515069291121472547 had arrived at the post office addressed to "William Fontaine" 1001 Creston Ave., Memphis, TN 38127.  TFO Meeks went to the post office and separated the package from the rest of the parcels and requested the assistance of a narcotics sniffing dog.  DEA TFO canine handler, Officer Maliskas canine, Bono, allegedly alerted on the package and a warrant was requested.  TFO Meeks, in his application for a search warrant, advise the court that a DEA drug sniffing dog, named "Bono" was used to sniff the package.  According to DEA agent Meeks, he was informed by "Bono" DEA handler, TFO Maliskas, that Bono alerted to the package.  A search warrant was issued, and the package was searched.

On May 11th, 2021 TFO Robert Meeks received an alert that a USPS Express mail parcel (EJ714004315US) had arrived at the Frayser Post Office in Memphis, TN., addressed to "William Fontaine" 1001 Creston Ave., Memphis, TN 38127.  TFO Meeks went to the post office and reviewed the parcel.  After his review of the parcel, TFO Meeks removed the parcel from the other packages and called for the assistance of a drug sniffing dog.  TFO Meeks, in his application for a search warrant, advise the court that a DEA drug sniffing dog, named "Bono" was used to sniff the package.  According to DEA agent Meeks, he was informed by "Bono" DEA handler, TFO Maliskas, that Bono alerted to the package.  A search warrant was issued, and the parcel was searched.  Recovered from the package was 14 clear and silver bags of marijuana.

On August 17th, 2021, a TFO agent received an alert that a USPS Express Mail parcel EJ914427867US had arrived at the Frayser Post office in Memphis, TN., addressed to "William Fontaine" 1001 Creston Ave., Memphis, TN 38127.  A Post Office TFO and a Special Agent (SA) went to the post office and reviewed the parcel.  After their review of the parcel, the TFO and SA removed the parcel from the other packages and called for the assistance of a drug sniffing dog.

TFO Meeks, in his application for a search warrant, advise the court that a Memphis Police Department drug sniffing dog was used to sniff the package.  According to the Memphis detective drug handler, the TFO agent was informed by the MPD handler, that the drug sniffing dog alerted to the package.  A search warrant was issued, and the parcel was searched.  Recovered from the package was 283 grams of methamphetamine.

On August 18th, 2021, a federal anticipatory search warrant was executed on 1001 Creston Ave., Memphis.  The agents allege that the search of the house was performed after the delivery of the parcel.  Mr. Fant was not present at the residence when the search occurred.  During the search of the residence under this warrant, the following contraband was recovered: three (3) firearms; one (1) small digital scale; one (1) pill press; one black, green, and blue case w/magnets attached; two (2) clear bags of suspected methamphetamine; suitcase which contained a bag of purple powder; and several bags of different pills

## **MEMORANDUM OF LAW**

A. **Mr. Fant has standing to contest the seizure and search of USPS Priority Mail 9505515069291121472547; USPS Express Mail Parcel EJ714004315US; and USPS Express Mail Parcel EJ914427867US**

"In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that his expectation is reasonable, i.e., one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143-144 (1978).  '" Because Fourth Amendment rights are "personal," the central inquiry in any suppression hearing is whether the defendant challenging the admission of evidence has shown a

legitimate expectation of privacy in the place searched or the thing seized.'" *U.S. v. Waller*, 426 F.3d 838, 843 (6th Cir. 2005) (quoting *U.S. v. King*, 227 F.3d 732, 743 (6th Cir. 2000); *U.S. v. Johnson*, 25 F. Supp. 3d 1034, 1037 (W. D. MI. 2014).  In *U.S. v. Elgin*, 57 Fed. Appx. 659 (6th Cir. 2003), the court held that the defendant did not have standing to contest the disputed search and seizure of a package where the package had not been sent by Elgin, addressed to Elgin, or mailed to Elgin's address. *Id.* at 661; *Johnson*, 25 F. Supp. 3d at 1037.

Mr. Fant has standing to contest the search and seizure of the parcels.  All the parcels that were seized where being mailed to Mr. Fant's address.

**B.** **The Postal Inspector(s), Task Force Officer(s), Did Not Have Reasonable Suspicion to Detain USPS Priority Mail 9505515069291121472547; USPS Express Mail Parcel EJ714004315US; and USPS Express Mail Parcel EJ914427867US**

"It has long been held that first-class mail such as letters and sealed packages subject to letter postage…is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment." *U.S. v. Van Leeuwen*, 397 U.S. 249, 251 (1970).  The Sixth Circuit has held that "only reasonable suspicion, and not probable cause, is necessary in order to briefly detain a package for further investigation, such as examination by a drug sniffing dog." *U.S. v. Robinson*, 390 F.3d 853, 870 (6th Cir. 2004).  To find reasonable suspicion, the government must "point to specific and articulable facts, which taken together with rational inferences from those facts,' reasonably suggest" a basis for seizure. *U.S. v. Urrieta,* 520 F.3d 569, 573 (6th Cir. 2008). Courts look to the "totality of the circumstances" at the time of seizure, and an officer must "not act on an inchoate and unparticularized suspicion or hunch,' but on… specific reasonable inferences.'" *Id. (*quoting *Terry v. Ohio*, 392 U.S.  1 (1968); *U.S. v. Underwood*, 1996 U.S. App. LEXIS 24955* (6th Cir. Sept. 20, 1996) (applying Terry factors to package seizures); *U.S. v. Waller*, 2015 U.S. Dist. LEXIS 62625* 4 (E.D. Mich. May 12, 2016).

1.      **May 5th, 2010 Search of USPS Priority Mail Package**
        **9505515069291121472547**

U.S. Postal Inspector Robert Weeks, in his affidavit to the court, states that he went to the
Frayser Post Office on May 5th, 2021 after being alerted by the post office that a package had
arrived for 1001 Creston Ave.  Inspector Weeks states that upon arriving at the post office he
retrieved the package from the post office employee and reviewed the package.  After reviewing
the package, he took the package out of the stream of mail and subjected the package to a dog
sniff without having any reasonable suspicion that the package contained narcotics.  Absent
reasonable suspicion the removal of the package from the stream of mail and subjecting it to a
sniff by a narcotics detection dog violated Mr. Fant's Fourth Amendment rights.  Any evidence
obtained as a result of the search of the package must be suppressed.

2.      **May 11th, 2021 search of USPS Express Mail Parcel EJ714004315US**

An unnamed U.S. Postal Inspector TFO and an unnamed Special Agent, were contacted
by the Frayser Post Office on May 11th, 2021 and alerted, by the post office, that a package had
arrived for 1001 Creston Ave.  The unnamed Postal Inspector and Special Agent went to the
Frayser post office and upon arriving at the post office they retrieved the package from the post
office employee and reviewed the package.  After reviewing the package, they took the package
out of the stream of mail and subjected the package to a dog sniff without having any reasonable
suspicion that the package contained narcotics.  Absent reasonable suspicion the removal of the
package from the stream of mail and subjecting it to a sniff by a narcotics detection dog violated
Mr. Fant's Fourth Amendment rights.  Any evidence obtained as a result of the search of the
package must be suppressed.

    **3.**    **August 17th, 2021 search of USPS Express Mail Parcel EJ914427867US**

An unnamed U.S. Postal Inspector TFO and an unnamed Special Agent, were contacted by the Frayser Post Office on August 17th, 2021 and alerted, by the post office, that a package had arrived for 1001 Creston Ave.  The unnamed Postal Inspector and Special Agent went to the Frayser post office and upon arriving at the post office they retrieved the package from the post office employee and reviewed the package.  After reviewing the package, they took the package out of the stream of mail and subjected the package to a dog sniff without having any reasonable suspicion that the package contained narcotics.  Absent reasonable suspicion the removal of the package from the stream of mail and subjecting it to a sniff by a narcotics detection dog violated Mr. Fant's Fourth Amendment rights.  Any evidence obtained as a result of the search of the package must be suppressed.

    **C.**  **The affidavits in support of the search warrants for USPS Priority Mail 9505515069291121472547; USPS Express Mail Parcel EJ714004315US; and USPS Express Mail Parcel EJ914427867US lacked probable cause that contraband would be found in the target packages**

For a search warrant to be valid, it must be supported by probable cause. *U.S. Const. amend. IV* ("No warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.").  To determine whether an affidavit establishes probable cause, an issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him…there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The Court's review for sufficiency of evidence is limited to the information contained within the four corners of the affidavit. *U.S. v.*

*Coffee*, 434 F.3d 887, 892 (6th Cir. 2006); *U.S. v. McCollough*, 2016 U.S. Dist. LEXIS 62037* 4 (E.D. Mich. May 11, 2016).

A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." *U.S. v. Navarro-Camacho,* 186 F.3d 701,706 (6th Cir. 1999); *U. S. v. Butler*, 2021 U.S. Dist. LEXIS 145710 *17 (E.D. Mich. Aug. 4th, 2021). However, "for a positive dog reaction to support a determination of probable cause, the training and reliability of the dog must be established." *Id*., *U.S. v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994). As the Sixth Circuit explained in *Diaz*, the evidence or support for a dog's reliability need not be significant:

> When the evidence presented, whether testimony from the dog's trainer or records of the dog's training, establishes that the dog is generally certified as a drug detection dog, any other evidence, including testimony of other experts, that may detract from the reliability of the dog's performance properly goes to the "credibility" of the dog. Lack of additional evidence, such as documentation of the exact course of training, similarly would affect the dog's reliability. As with the admissibility of evidence generally, the admissibility of evidence regarding a dog's training and reliability is committed to the trial court's sound discretion.

*Id*. at 394.

The affidavits for the May 3rd, 2021 and May 11th, 2021 search warrant affidavits submitted to the Magistrate Judge state the drug detection dog, "Bono" was last certified by the National Narcotics Detector Dog Association. The person who made this certification, Inspector Weeks, was not the trainer of the dog nor was he the dog's handler. Other than stating when the narcotics dog was last certified, this affidavit does not provide any other information pertaining to the dog, it's training, and/or its handler. It doesn't state how many positive/negative sniffs the dog has had, certification requirements, and it does not provide any information on the dog's

accuracy and reliability, and nor does it identify how the dog identified the package, either sitting alone or with other packages.  Consequently, these affidavits fail to provide the Magistrate Court with sufficient probable cause and the evidence derived from the searches of these packages must be suppressed.

The affidavit for the August 17th, 2021 search warrant submitted to the Magistrate Judge state the drug detection dog, "whose identity is not known" was last certified by the American Detection Canine Association in June 2021.  The person who made this certification, a Postal Inspector, was not the trainer of the dog nor was he the dog's handler.  Other than stating when the narcotics dog was last certified this affidavit does not provide any other information pertaining to the dog, his training, and/or its handler.  It doesn't state how many positive to negative sniffs the dog has had, the requirements that goes along with certification, nor does it provide any information on its accuracy and reliability.  And lastly, the warrant affidavit does not identify how the dog identified the subject package, either sitting alone or with other packages. Consequently, this affidavit fails to provide the Magistrate Court with sufficient probable cause and the evidence derived from the searches of these packages must be suppressed.

D. **The Search of Mr. Fant's residence pursuant to an Anticipatory Search Warrant was made without probable cause and violated Mr. Fant's Fourth Amendment Rights**

An anticipatory search warrant differs for a traditional search warrant.  Traditional warrants issue upon a showing of probable cause.  By contrast, an anticipatory warrant only becomes effective upon the happening of some future event-a "triggering condition"-which establishes probable cause for the search. *U.S. v. Grubbs*, 547 U.S. 90, 94 (2006); *U.S. v. Perkins*, 887 F. 3d 272, 274 (6th Cir. 2018).  Anticipatory search warrants, like all search

warrants, require probable cause. *U. S. Const. amend. IV; Grubbs*, 547 U.S. at 94.  The triggering event provides that cause. *Id*.

Anticipatory search warrants are peculiar to property in transit.  Such warrants—warrants that are issued in advance of the receipt of particular property at the premises designated in the warrant—are not unconstitutional per se. *U.S. v. Lawson*, 999 F.2d 985 (6th Cir.), cert. denies, 126 L. ED. 2d 473, 114 S. Ct. 574 (1993); *U.S. v. Prince*, 1995 U.S. App. LEXIS 14812 * 5 (6th Cir. June 13, 1995).  However, in issuing an anticipatory search warrant, "the magistrate must set conditions … that are 'explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents.'" *Id*.; *U.S. v. Ricciardelli*, 998 F.2d 8, 12 (1st Cir. 1993). There are two particular situations in which the anticipatory warrant must restrict the discretion of government agents.  First, the warrant must ensure that "the triggering event is both ascertainable and preordained." *Id*.  Second, "the contraband must be on a sure and irreversible course to its destination, and a future search of the destination must be made expressly contingent upon the contraband's arrival there." *Id*.

The warrant in the above matters fails to provide probable cause for its issuance.  First, the language in the warrant is conflicting and ambiguous, and therefore, leaves to much discretion to the executing officers.  The warrant talks about making a controlled delivery to "William Fontaine" at the premises described in attachment A.  The warrant goes on to further indicate that the "warrant will only be executed following a successful controlled delivery…." but does not indicate if that delivery is to be made to a person or the premises.

The warrant further fails because the triggering act, "a controlled delivery to "William Fontaine" at the premises…" never happen.  In a plain reading of the warrant application, the affiant states "that the warrant will only be executed following a successful controlled delivery

…"  The warrant's definition of what a controlled delivery is contained in its warrant application, paragraph 14 where it describes a controlled delivery as a delivery to "William Fontane" at the premises…"  As described, the triggering act never occurred, therefore the probable cause for the warrant never materialized. All the contraband recovered during the search of the house must be suppressed.

1.  **The Affidavit was so lacking in probable cause that the good faith exception in *Leon* should not be allowed to salvage the search.**

The "good faith" exception to the exclusionary rule was announced in the Supreme Court's decision in *U.S. v. Leon*, 468 U.S. 897, 921 (1984).  This exception provides that the "extreme sanction" of the exclusion of evidence from trial does not apply when the evidence is seized pursuant to a search warrant obtained in an "objectively reasonable manner" from a neutral magistrate, even where the warrant or supporting affidavits were defective. *Id*.

The Supreme Court itself recognized, however, that the reviewing court's deference to the magistrate's finding of probable cause "is not boundless."  In fact, no deference should be accorded where the affidavit "does not provide the magistrate with a *substantial basis* for determining probable cause."  *Id*. at 915, quoting *Gates*, 462 U.S. at 239.  Thus, a reviewing court may find that "the warrant was invalid because the magistrates probable cause determination reflected an improper analysis of the totality of the circumstances," even where a more than "bare-bones" affidavit was presented. *Leon*, 468 U.S. at 915.

Even in the wake of the good faith exception, suppression remains the appropriate remedy where the warrant was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id*. at 923, quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975); see also *United States v. Cancelmo*, 64 F.3d 804, 807 (2nd Cir. 1995);

*U.S. v. Hallam*, 407 F.3d 942, 946 (8th Cir. 2005); *U.S. v. Blake*, 868 F.3d 960, 974-75 (11th Cir. 2017).

The warrant affidavit in question does not provide any information for the magistrate to determine a nexus between the evidence sought and Mr. Holloway's residence.  The triggering act, which is the act that provides the probable cause in an anticipatory warrant was never triggered by the officers.  Because the warrant affidavit does not specify that delivery of the package is the triggering event but specifies that delivery to "William Fontaine" at the residence is the triggering event, that never happen, probable cause for the warrant was never ascertained.  Because of this failure, an officer reading this affidavit they would see that the event triggering the probable cause had not occurred and no other information in the affidavit provided the required nexus between Mr. Fant's residence and possible drug activity.  This affidavit is the epitome of a "bare bones affidavit" and the good faith exception in *Leon* is not applicable to this warrant.

## MISCELLANEOUS REQUESTS

Mr. Fant requests the permission of the Court to make further and other motions as the facts of the case may require.

## CONCLUSION

For all the reasons stated above, this court should GRANT Mr. Fant's motion to suppress any and all evidence seized  pursuant to an unlawful search and seizure of his property and his residence; for an order suppressing from use as evidence against the defendant in this or any other proceeding the evidence seized pursuant to the illegal search and seizure of defendant's mail and residence; or in the alternative, for a hearing pursuant *Jackson v. Denno*, 378 U.S. 368, 376-77 (1964) and *U. S. v. Moore*, 936 F.2d 287, 289 (6th Cir. 1991), which provides that essential findings on the record are necessary to facilitate appellate review.

Respectfully submitted,
DORIS RANDLE-HOLT
FEDERAL DEFENDER

s/ Kafahni Nkrumah, Esq.
Assistant Federal Public Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(901) 544-3895

CERTIFICATE OF SERVICE

I, Kafahni Nkrumah, Esq., certify a true copy of the foregoing Motion was forwarded by electronic means via the Court's electronic filing system to Mr. Greg Allen, Assistant United States Attorney, Suite 800, 167 North Main Street, Memphis, TN 38103.

THIS the 22nd day of December 2021.

s/ Kafahni Nkrumah, Esq.
Assistant Federal Defender